IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BERNARD F. RAYMOND,

      **Plaintiff,**

    **vs.**                                                                    Civ. No. 13-0010 JCH/SGY

NEW MEXICO PUBLIC EDUCATION
DEPARTMENT, and HANNA SKANDERA,
individually and in her capacity as its
Secretary-Designate; and the NEW MEXICO
STATE PERSONNEL OFFICE, and EUGENE
MOSER, individually and in his official capacity
as State Personnel Office Director,

      **Defendants.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

      This matter is before the Court on *Defendants Skandera's and Moser's Motion and Memorandum in Support of Partial Summary Judgment on Plaintiff's Civil Rights Claim.* [Doc. 25] Defendants Skandera and Moser move for partial summary judgment on Count IV, claiming qualified immunity on the § 1983 claim.[1] Plaintiff filed a response [Doc. 29], and Defendants filed a reply [Doc. 31].

      Having reviewed the motion, briefs, evidence, and relevant caselaw, the Court concludes that Defendants' motion should be granted.

---

[1] Defendants make no argument or motion with respect to the § 1985 conspiracy claim under Count IV.

## BACKGROUND

The following is a statement of the facts relevant to the Motion, viewed in the light most favorable to Plaintiff.

Plaintiff was a classified employee of the State of New Mexico, continuously employed by the New Mexico Public Education Department ("PED") for at least five years prior to July 1, 2011.  [Doc. 25, pp. 2-3, ¶¶ 1-2, 4; Doc. 30,  pp. 4-5, ¶¶ 1-2, 4]  While employed by PED as Human Resources Manager, Plaintiff's job was to address employee complaints of discrimination and retaliation.  [Doc. 1-1, p. 3, ¶ 8; Doc. 6, p. 3, ¶ 8]  Following one such investigation, Plaintiff was removed from his position as Human Resources Manager.  Plaintiff then filed suit against PED in 2009, claiming retaliation and discrimination; the case was settled in April or May of 2011 on grounds favorable to Plaintiff.  [Doc. 1-1, pp. 3-4, ¶¶ 9-11; Doc. 6, pp. 3-4, ¶¶ 8-11; Doc. 25, p. 5, ¶ 18; Doc. 30, p. 5, ¶ 5]

Plaintiff continued to work for PED; in 2011 he was an Administrative Operations Manager II in the Office of Inspector General.  Plaintiff admits in his Complaint that he was notified on June 10, 2011, that he would be laid off pursuant to an agency-wide "reduction in force" ("RIF").  [Doc. 1-1, p. 5, ¶ 17]  After being laid off on July 1, 2011, Plaintiff was hired as Human Resources Manager for the State Treasurer's Office effective August 15, 2011.  [Doc. 25, p. 10, ¶ 43]

On December 4, 2012, Plaintiff filed in state district court his "Notice of Appeal and Complaint for Retaliatory Discharge, Breach of Employment Contract and Deprivation of Civil Rights."  [Doc. 1-1]  The complaint includes four claims:  Count I—Violations of New Mexico Human Rights Act, NMSA 1978, §§ 28-1-1 to -15 (2007); Count II—Whistleblower Protection Act, NMSA 1978, §§ 10-16C-1 to -6 (2010); Count III—Breach of employment contract; and

2

Count IV—Deprivation of property and liberty rights without due process under § 1983, and conspiracy under § 1985.  [Doc. 1-1]  On January 7, 2013, Defendants filed a Notice of Removal to this Court, stating that this Court has jurisdiction under 28 U.S.C. § 1331.  [Doc. 1]

## LEGAL STANDARDS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it could have an effect on the outcome of the suit.  *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014).  A dispute over a material fact is genuine if the evidence presented could allow a rational jury to find in favor of the non-moving party.  *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  The court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in favor of that party.  *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007).  The court cannot weigh the evidence and determine the truth of the matter, but instead determines whether there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

A defendant seeking summary judgment bears the initial burden of showing that there is no genuine dispute as to a material fact.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).  When, as in this case, the defendants do not have the burden of persuasion at trial, they can satisfy their burden at the summary judgment stage by identifying a lack of evidence for the plaintiff on an essential element of the plaintiff's claim.  *Id*. at 671.  Once the defendants satisfy their burden, the burden shifts to the plaintiff.  *Id*.

The plaintiff cannot rest on his pleadings, but must go beyond the pleadings and "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment."  *Sealock v. Colo.*,

218 F.3d 1205, 1209 (10th Cir. 2000).  The plaintiff must "set forth specific facts" from which a rational trier of fact could find in the plaintiff's favor, identifying those facts in the affidavits, deposition transcripts, or incorporated exhibits.  *Adler*, 144 F.3d at 671 (internal quotation marks omitted).   The plaintiff cannot rest on ignorance of the facts, on speculation, or on unsubstantiated conclusory allegations.  *Rocky Mountain Rogues, Inc. v. Town of Alpine*, 375 Fed. Appx. 887, 891 (10th Cir. 2010) (unpublished) (internal quotation marks omitted)[2]; *see Harvey Barnett, Ind. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003).

To survive a summary judgment motion in which the defendant claims qualified immunity, the plaintiff has the additional burden of satisfying "a strict two-part test."  *Rojas v. Anderson*, 727 F.3d 1000, 1003 (10th Cir. 2013).   The plaintiff must show, first, that the defendants' actions violated a constitutional right, and second, that this right was "clearly established" at the time of the conduct.  *Id*.  A right is clearly established if the "'contours of the right'" are "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  A plaintiff can carry his burden of showing that a right is clearly established by citing Supreme Court or Tenth Circuit cases on point, or by demonstrating that the weight of authority from other circuits shows the right to be clearly established.  *Albright*, 51 F.3d at 1535.  "<u>If, and only if</u>, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law."  *Rojas*, 727 F.3d at 1003 (internal quotation marks omitted; emphasis added).

---

[2] The Court cites this and other unpublished opinions for their persuasive value.  *See* 10th Cir. R. 32.1(A).

"Qualified immunity is designed to shield public officials from liability and ensure 'that erroneous suits do not even go to trial.'" *Albright*, 51 F.3d at 1534. In addition, qualified immunity is designed to prevent government officials from facing the other burdens of litigation. *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009). The Supreme Court "has directed the lower federal courts to apply qualified immunity broadly, to protect from civil liability for damages all officers except 'the plainly incompetent or those who knowingly violate the law,'" so that officers "might not be unduly 'inhibit[ed] . . . in performing their official duties.'" *Wilson v. City of Lafayette*, 510 Fed. Appx. 775, 780 (10th Cir. 2013) (unpublished) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986), and *Medina v. Cram*, 252 F.3d 1124, 1127 (10th Cir. 2001)).

The Fourteenth Amendment prohibits deprivation of "life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. "An essential principle of due process is that a deprivation of life, liberty or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotation marks omitted).

A person must be given "'"some kind of a hearing"'" before he is deprived of a protected property interest. *Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009) (quoting *Loudermill*, 470 U.S. at 542 (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 569-70 (1972))). "A full evidentiary hearing is not required prior to an adverse employment action." *West v. Grand Cnty.*, 967 F.2d 362, 367 (10th Cir. 1992). Instead, an employee "needs only to be given notice and an opportunity to respond." *Id*. These requirements may be satisfied by "informal proceedings, such as pretermination warnings and an opportunity for a face-to-face meeting with supervisors," or "even a limited conversation between an employee and his supervisor immediately prior to the employee's termination." *Riggins*, 572 F.3d at 1108. A pretermination

hearing "'need not be elaborate,'" because it is only intended to be "'an initial check against mistaken decisions.'"  *West*, 967 F.2d at 367 (quoting *Loudermill*, 470 U.S. at 545-46).  The standards for a pretermination hearing "are not very stringent."  *Id*. at 368.

"In general, a post-termination hearing is required."  *Copelin-Brown v. N.M. State Pers. Office*, 399 F.3d 1248, 1254-55 (10th Cir. 2005) (citing *Loudermill*, 470 U.S. at 546-47).  More formal due process protections may be required for a post-termination hearing because definitive factfinding occurs at that time.  *West*, 967 F.2d at 368-69.  In a case in which an employee asserted that the RIF was a sham, the Tenth Circuit held that the post-termination hearing was adequate when the employee was able to present testimony and witnesses; the employee was not entitled to an opportunity to confront her accusers or to challenge their evidence, because she made no attempt to require attendance of the witnesses against her.  *Id*. at 369-70.  In another case, the Tenth Circuit held that an employee discharged for disability was denied due process when there was no post-termination hearing or opportunity to appeal; the employee had minimal opportunity to present her side of the case in the pretermination procedures.  *Copelin-Brown*, 399 F.3d at 1254-55.

## DISCUSSION

Defendants move for partial summary judgment on Count IV.  The Complaint asserts two claims under Count IV:  (1) denial of procedural due process by terminating Plaintiff without affording him prior notice, and pre- and post-termination hearings; and (2) conspiracy under § 1985.  [Doc. 1-1, pp. 10-11]  The § 1985 claim is not currently before the Court; Defendants' motion is limited to the § 1983 claim.

Plaintiff's Response confirms that his § 1983 claim in Count IV is limited to the issue of deprivation of procedural due process, asserting that only "the following limited issues" are properly before the Court:

> 1. Whether Defendants' failure to allow Plaintiff pre- and post-termination hearings in connection with his July 1, 2011 discharge violated Plaintiff's Constitutionally protected right to due process of law contrary to 42 U.S.C. §1983; and

> 2. Whether a reasonably competent public official would have known that the failure to provide Plaintiff with pre- and post-termination process violated his constitutionally protected right to due process of law. *Anderson v. Creighton*, 483 U.S. 635 (1987).

Doc. 29, pp. 2-3]  Plaintiff states that substantive issue of retaliation is not before the Court on this summary judgment motion.  [Doc. 29, p. 2]

The Court must make a two-step inquiry to determine whether Plaintiff was denied procedural due process:  (I) Whether Plaintiff possessed a protected interest such that due process protections were applicable; and  (II) Whether Plaintiff was afforded an appropriate level of process.  *Riggins*, 572 F.3d at 1108.

## I.  Property Interest in Continued Employment

Plaintiff was a classified employee of the State of New Mexico, who had been continuously employed by the State for more than one year by July 1, 2011.  [Doc. 30, ¶ 1] Plaintiff alleges that since he had been employed by PED for a period of more than one year, his employment could be terminated only for "just cause," which gave him a property interest in continued employment.  [Doc. 1-1, ¶ 21]

Defendants contend that Plaintiff "had no property interest in his pre-RIF PED position." [Doc. 6, ¶ 21; Doc. 25, p. 1]  They argue that "any property interest in [Plaintiff's] position or in continued employment did not survive the bona fide reduction in force."  [Doc. 25, p. 1]

7

Property rights are not created by the Constitution, but by an independent source such as state law. *Loudermill*, 470 U.S. at 538; *Copelin-Brown*, 399 F.3d at 1254. To have a property interest in continued employment, Plaintiff "'clearly must have more than an abstract need or desire for it,'" but must have "'a legitimate claim of entitlement to it.'" *West*, 967 F.2d at 366 (quoting *Roth*, 408 U.S. at 577); *see Hesse v. Town of Jackson*, 541 F.3d 1240, 1245 (10th Cir. 2008) (applying *Roth* and concluding property interest is "a legitimate expectation in continued employment"). When employment can only be terminated for specified reasons, the employee has a sufficient expectation of continued employment to invoke the protections of the Fourteenth Amendment. *West*, 967 F.2d at 366.; *see Copelin-Brown*, 399 F.3d at 1254.

Under Section 10-9-18 of New Mexico's State Personnel Act and regulations, Plaintiff could only be "dismissed, demoted or suspended" for "just cause" because he had completed the one-year probationary period. NMSA 1978, § 10-9-18(A), (F) (2009); NMSA 1978, § 10-9-13(A), (E) (1983); NMSA 1978, § 10-9-16 (1961); N.M. Admin. Code title 1, § 7.11.10. In *Copelin-Brown*, the Tenth Circuit held that a New Mexico state employee had a property interest in continued employment because her employment could only be terminated for specified reasons—despite a regulation purportedly allowing termination without a hearing of a permanently disabled employee. *Copelin-Brown*, 399 F.3d at 1254-55. The issue in the case before this Court, however, is whether Section 10-9-19 of the New Mexico State Personnel Act leads to a different result.

Section 10-9-19 provides an additional basis for termination: a reduction in force ("RIF"), based on "deletion of positions, shortage of work or funds, or other reasons that do not reflect discredit on the services of the employees." NMSA 1978, § 10-9-19 (1963); N.M. Admin. Code title 1, § 7.10.9(A). In *West*, the Tenth Circuit held that a county employee in Utah

8

had a property interest based on the county's "restrictive discharge policy," under which a permanent employee could not be discharged "'except for cause or reasons of curtailment of work or lack of funds'"—largely the same bases provided in Sections 10-9-18 and 10-9-19 of the New Mexico State Personnel Act. *West*, 967 F.2d at 366. But in a later (though unpublished) case, the Tenth Circuit acknowledged caselaw suggesting that a property interest may not survive a *bona fide* RIF. *Theis v. Denver Bd. of Water Comm'rs*, 149 F.3d 1191, *2 (10th Cir. 1998) (unpublished). In *Theis*, the Tenth Circuit did not extend or apply *West*'s holding, but instead found it unnecessary to reach the issue and assumed arguendo that the plaintiff's property interest survived a RIF. *Id.*; *cf. Abreu v. N.M. CYFD*, 797 F. Supp. 2d 1199, 1230-32 (D.N.M. 2011) (holding that plaintiffs' property interest did survive RIF). Although Plaintiff could not be laid off without satisfying the RIF statute, the statute does not require findings specific to Plaintiff before termination but instead provides a right to be rehired. If the procedures required by the RIF statute constitute "'an entitlement to nothing but procedure,'" this could not "'be the basis for a property interest.'" *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074, 1085 (10th Cir. 2006) (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 764 (2005)); *cf. Simmons v. Uintah Health Care Special Serv. Dist.*, 364 Fed. Appx. 507, 515-16 (10th Cir. 2010) (unpublished) (concluding that RIF policy alone was insufficient to establish property interest in at-will employee).

The parties have identified no Tenth Circuit caselaw directly on point. The Court concludes that the issue is not definitively settled, but that it is unnecessary to reach the issue in this case. The Court will assume arguendo that Plaintiff had a property right that survived the RIF.

## II. Due Process Requirements

Plaintiff states that he was aware, as early as May 2011 of "rumors" of "an impending reduction in force."  [Doc. 30, ¶ 7]  Plaintiff's Complaint states that he was notified on June 10, 2011, that he would be laid off pursuant to the RIF.  [Doc. 1-1, p. 5, ¶ 17]

The undisputed facts show the following opportunities for Plaintiff to be heard:[3]

(1)  On June 3, 2011, Plaintiff had a three-minute telephone conversation with Moser (Director of the State Personnel Office), in which Plaintiff mentioned his concern that his position might be eliminated by the RIF.  [Doc. 25, p. 6, ¶ 24]

(2)  On June 3, 2011, Plaintiff followed up this call with an email to Moser, attaching emails from 2007 to "jog [his] memory" of a previous meeting.  [Doc. 25, p. 6, ¶ 25; Doc. 25-3, pp. 8-10]

(3)  On June 6, 2011, Plaintiff emailed Skandera (Secretary for PED), advising that Plaintiff was aware that the RIF Plan would be submitted for approval by the State Personnel Board on June 10, 2011, and asking Skandera to consider a reduced work week or job share instead of an RIF including Plaintiff's position.[4]  [Doc. 25, p. 7, ¶ 27; Doc. 25-2, p. 17]

(4)  At the June 10, 2011 State Personnel Board meeting, the RIF plan was presented, and Plaintiff addressed the Board, expressing his opinion that the RIF was not necessary.  [Doc. 25, p. 8, ¶ 30; Doc. 29, p. 4, ¶ 30 (Plaintiff agreeing with this part of Defendants' UMF #30); Doc. 30, pp. 5-6, ¶ 8]  Plaintiff's remarks were directed to general rather than personal concerns—in

---

[3] Defendants allege a number of additional opportunities for Plaintiff to be heard regarding the RIF, including general meetings, face-to-face meetings, and a telephone message.  [Doc. 25, pp. 8-9, ¶¶ 32, 33, 35, 40]  Since Plaintiff disputes these allegations, the Court does not consider them.  [Doc. 29, pp. 4-5, ¶¶ 31 (incorrectly numbered, but disputing ¶ 32), 33, 35, 40]

[4] Plaintiff asserts that this allegation (Defendants' UMF # 27) is irrelevant, but Plaintiff does not dispute it.  *See* Rule 56(e) (failure to properly address an assertion of fact).

accordance with the State Personnel Board's express limitation of discussion.  [Doc. 29, p. 4, ¶ 30; Doc. 30, p. 6, ¶ 9; Doc. 25, p. 8, ¶ 30]  Plaintiff did not know at that time that he would be laid off, and thus he did not assert that he was being laid off in retaliation for his litigation against PED or that the RIF was a subterfuge to terminate Plaintiff's position without cause. [Doc. 29, p. 4, ¶ 30; Doc. 30, p. 6, ¶ 9]

(5)  A letter was sent to Plaintiff on June 10, 2011, notifying him that he would be laid off effective July 1, 2011, and advising that the State Personnel Office would contact him regarding his RIF rights and the procedure for exercising those rights.  [Doc. 25, p. 8, ¶ 34; Doc. 25-2, p. 18]  This letter was not hand-delivered, but Plaintiff admits receiving it "by mail sometime after June 10, 2011."  [Doc. 29, p. 4, ¶ 34]

(6)  On June 13, 2011, the State Personnel Office sent Plaintiff a letter explaining his reemployment rights and providing him with contact information for the State Personnel Office consultant assigned to assist him in applying for vacant classified positions.  [Doc. 25, p. 9, ¶ 38; Doc. 25-3, pp. 12-14]  The letter also supplied contact information for Rivera-Smith (Executive Human Resource Manager), and stated that Plaintiff could contact her if he had any questions.

(7)  On July 29, 2011, Plaintiff emailed Moser notifying him that Plaintiff wanted to appeal his separation under NMSA 1978, § 10-9-18 (2009), and requesting a hearing.  [Doc. 25, p. 10, ¶ 41; Doc. 29, p. 5, ¶ 41 (Plaintiff agreeing with this part of Defendants' UMF #41; Plaintiff disputes only the assertion that the statute provides for appeals of for-cause terminations only); Doc. 25-3, p. 15 (print-out of email)]

Plaintiff does not dispute Defendants' allegations that the RIF was executed because of "substantial budget cuts" for PED, decreasing PED's appropriations by $2,853,000 (a 24%

decrease from PED's previous annual budget).[5]   [Doc. 25, p. 3, ¶¶ 6-7]   In developing the RIF plan to address the budget deficit, PED did not consider the conduct or job performance of individual PED employees.   [Doc. 25, p. 4, ¶ 14]   The RIF plan cut thirty-three positions in twenty PED bureaus.   [Doc. 25, p. 6, ¶ 21]

Plaintiff states that he "does not attack the *bona fides* of the reduction in force, but claims that the reduction in force as it applied to him was a sham."   [Doc. 29, p. 8; *see also* Doc. 29, p. 6, ¶ 3 ("Plaintiff does not contest that PED had *bona fide* reasons for implementing a reduction in force."); Doc. 29, p. 2 (Plaintiff stating that the issue of whether "Defendants conducted a valid reduction in force" is "not properly before the Court")]   Plaintiff's position is not entirely clear— both admitting that the RIF was *bona fide* and yet asserting that it was a sham.   The Court first considers whether Plaintiff was afforded due process with respect to a *bona fide* RIF.   Plaintiff's pleadings and arguments suggest that his § 1983 claim is limited to this issue; Plaintiff relies entirely on *Abreu* and fails to even cite *West*.   Plaintiff appears to argue that he should have been afforded hearings under *Abreu*, and to assume that within those hearings he could have raised his claim of a "sham."   Giving Plaintiff the benefit of the doubt, however, the Court will also consider whether Plaintiff's claim that the RIF was a sham as applied to him entitled Plaintiff to notice and hearings even if *Abreu* did not.

### A.  *Bona fide* RIF

The parties have not identified Tenth Circuit caselaw definitively determining what process is due under a *bona fide* RIF.   This issue was not decided in *West*:  the Tenth Circuit explicitly distinguished the case before the Court from those in which a termination "is the result of a bona fide reduction in force, particularly when the reduction involves a large number of

---

[5] Plaintiff merely asserts that allegations set forth in this paragraph are irrelevant at this point.  [Doc. 29, p. 3]

employees and is not directed toward just one employee or a small number of employees." *West*, 967 F.2d at 367.

### (1)  Constitutional violation under *bona fide* RIF

Plaintiff makes inconsistent representations about when he received notice that he would be laid off in the RIF.  Plaintiff's Complaint states that he was notified on June 10, 2011.  [Doc. 1-1, p. 5, ¶ 17]

But Plaintiff's affidavit alleges that he did not receive notice until some unspecified later date.  The June 10, 2011 letter from PED notified Plaintiff that he would be laid off effective July 1, 2011.  [Doc. 25-2]  Plaintiff admits that he received this letter, denying that it was hand-delivered but admitting that it was mailed to him.  [Doc. 30, ¶ 13]  The affidavit alleges that Plaintiff was "first notified" he would be laid off when he received this letter in the mail—which had to be sometime later than June 10th:

> 13.  I was first notified that I was being laid off as a result of the reduction of force, by letter date Jun 10, 2011.  This letter was not hand-delivered to me, but rather posted via United States mail.

 [Doc. 30, p. 6, ¶ 13]  Plaintiff does not state when he received this letter.  [*See* Plaintiff's Response, Doc. 29, p. 4, ¶ 34 (stating that "Plaintiff received the letter by mail sometime after June 10, 2011")]  It was part of Plaintiff's burden of establishing a due process violation to show notice was inadequate.  In accordance with this burden and general principles, the Court assumes that Plaintiff received the letter within five days.  *See Lozano v. Ashcroft*, 258 F.3d 1160, 1165 (10th Cir. 2001) (applying presumption that a letter was received either three or five days after mailing).

Whether Plaintiff received notice on June 10 or June 15, however, would not change the Court's conclusion.[6]  Allowing Plaintiff the benefit of the doubt, the Court assumes that Plaintiff received the letter on June 15, 2011.

Plaintiff argues that he "was not notified of, nor did he have an opportunity to respond to his proposed termination prior to his receipt of the department's final decision terminating him." [Doc. 29, p. 6, ¶ 4 (citing in support Plaintiff's affidavit, Doc. 30, p. 6, ¶¶ 9-10)]  The Court understands Plaintiff to be asserting that the "final decision" was June 10, 2011, and that he should have had notice and opportunity to respond prior to June 10th.  But June 10, 2011, is not the relevant date.  The Tenth Circuit held that "due process is required not before the initial decision or recommendation to terminate is made, but instead before the termination actually occurs"—prior to the termination of benefits.  *Riggins*, 572 F.3d at 1110.  The Court concludes that the effective date of the lay-off (July 1, 2011) is the relevant date, and that Plaintiff received notice before that date.

The Court further concludes that Plaintiff was given the opportunity to be heard—with respect to a *bona fide* RIF—before his termination on July 1, 2011.  In addition to a telephone conversation with Moser and emails to both Moser and Skandera, Plaintiff was given the opportunity at the June 10, 2011 State Personnel Board meeting to express his concerns about the RIF plan before it was adopted—and weeks before Plaintiff was actually laid off.  The Court emphasizes it is aware of Plaintiff's argument that he did not know at this time that he personally would be laid off, and thus he was not provided an opportunity to express his personal concerns about retaliation; however, the Court is presently considering Plaintiff's due process rights under

---

[6] Uncertainty about the date would therefore not generate a relevant disputed issue of fact, even if Plaintiff could create a fact issue via an affidavit inconsistent with the factual allegations of his Complaint.  *Cf. Burns v. Bd. of Cnty. Comm'rs*, 330 F.3d 1275, 1281-82 (10th Cir. 2003) (holding that affidavit contrary to affiant's prior sworn statements may be improper attempt to create sham fact issue).

a *bona fide* RIF (absent any claim it was a sham), and therefore the relevant opportunity is the opportunity to be heard on general concerns about the RIF—which was provided to Plaintiff. Further, the June 10 and June 13 letters advised Plaintiff about the RIF and his rights under the RIF; Plaintiff was provided with contact information for the State Personnel Office consultant assigned to assist him, and with contact information for the Executive Human Resource Manager, who stated that Plaintiff could contact her if he had any questions

In view of the "not very stringent" pretermination due process requirements, the Court concludes that Plaintiff was given adequate notice and opportunity to be heard before he was laid off on July 1, 2011. *West*, 967 F.2d at 367. The Tenth Circuit held in *West* that it was sufficient that West knew in advance that the county proposed to eliminate her job and she had several opportunities to discuss her potential termination with county officials. *Id.* at 368. As in *West*, Plaintiff Raymond was "not fired out of the blue," was "not fired for reasons that he did not know," and was "not fired without being given the 'opportunity to present his side of the story.'" *Id.* (quoting *Loudermill*, 470 U.S. at 542).

Defendants argue that Plaintiff also had adequate opportunity to be heard after the July 11 lay-off. Plaintiff does not dispute that he was sent a letter on June 13, 2011, explaining his reemployment rights and providing him with contact information for the State Personnel Office consultant assigned to help him apply for vacant classified positions. [Doc. 25, p. 9, ¶ 38; Doc. 25-3, pp. 12-14] This letter gave Plaintiff the name, email address, and telephone number of an employment consultant. [Doc. 25-3, p. 14] The letter also gave Plaintiff the name, email address, and telephone number of the writer, the Executive Human Resource Manager; the letter stated that she was available to assist Plaintiff and encouraged him to contact her if he had any

questions.  [Doc. 25-3, p. 14]  This letter arguably provided Plaintiff with the opportunity to be heard, either before or after the effective date of the RIF.

Plaintiff took it upon himself to email Moser on July 29, 2011, requesting a hearing. [Doc. 25-3, p. 15; Doc. 30, p. 7, ¶¶ 16-17]  There was no response to this email.  [Doc. 30, p. 7, ¶¶ 16-18]  It is true, however, that Plaintiff expressly requested an inapplicable procedure rather than an opportunity to be heard on a *bona fide* RIF.  Plaintiff expressly framed his request as an "appeal" in accordance with NMSA 1978, § 10-9-18 (2009).  [Doc. 25-3, p. 15]  But the New Mexico Court of Appeals held that this statute provides an "appeal" only for an employee "dismissed, demoted or suspended," and that no appeal exists "for an employee whose position has been abolished pursuant to a reduction in force under a layoff plan which has been formally approved by the [State Personnel] Board."[7]  *Cibas v. N.M. Energy, Minerals & Natural Res. Dep't*, 1995-NMCA-046, ¶ 15, 898 P.2d 1265, 1269.

If due process requires an opportunity to be heard following a *bona fide* RIF, it is not clear whether Plaintiff was afforded an adequate opportunity.  The Court concludes that it need not resolve this issue, however, because any such right was not clearly established, as explained below.

### (2)  Qualified immunity under *bona fide* RIF

The right "allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established." *Wilson v. Layne*, 526 U.S. 603, 615 (1999). "The operation of this standard, however, depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified." *Anderson*, 483 U.S. at 639.  As the Supreme Court explained, the right to due process "is quite clearly established by the Due Process Clause,

---

[7] To the extent that the Complaint asserts a § 1983 claim for failure to provide a "public hearing and district court review," [Doc. 11, p. 11, ¶ 45] the Court observes that failure to provide or follow state law procedures does not by itself establish a due process violation under federal law.  *See Simmons*, 364 Fed. Appx. at 515-16.

and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right." *Id*. But the test of "clearly established law" cannot be applied at this level of generality, or it would become "a rule of virtually unqualified liability." *Id*. The right asserted must, instead, be defined in a "more particularized" sense. *Id*. The Supreme Court emphasized that the inquiry into whether a right is clearly established "must be undertaken <u>in light of the specific context</u> of the case, not as a broad general proposition." *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (emphasis added). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful <u>in the situation he confronted</u>." *Id*. at 202 (emphasis added). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640. This does not mean that "the very action in question" must have been held unlawful, but "in the light of pre-existing law the unlawfulness must be apparent." *Id*.

As a general matter, the constitutional right to due process for deprivation of a property interest in employment was clearly established in June-July 2011. But this formulation constitutes a "broad general proposition," rather than proper consideration of "the specific context of the case." *Saucier*, 533 U.S. at 201. The Court concludes that the "relevant, dispositive inquiry" is whether it would have been clear to a reasonable official in June-July 2011 that a RIF required pre- and post-termination notice and hearings, even though the RIF was *bona fide* in the sense that it was budget-driven and not a sham. *See Whalen v. Mass. Trial Court*, 397 F.3d 19, 27-28 (1st Cir. 2005).

Plaintiff claims that he was deprived of due process, because he was not provided with pre- and post-termination hearings in connection with the RIF. [Doc. 29, p. 3] Plaintiff was

17

required to bear the "heavy" burden of showing that "the 'infringed right at issue was clearly established at the time.'"  *Smith v. McCord*, 707 F.3d 1161, 1162 (10th Cir. 2013) (quoting *Martinez v. Carr*, 479 F.3d 1292, 1294-95 (10th Cir. 2007)).  Plaintiff asserts that his citation to the district court opinion in *Abreu* satisfies this burden:

> The <u>Abreu</u> case is controlling and satisfies both prongs of the qualified immunity test.  Defendant Moser's failure to allow Plaintiff pre- and post-termination hearings in connection with his July 1, 2011 discharge violated Plaintiff's constitutionally protected right to due process of law contrary to 42 U.S.C. § 1983, and Moser had actual knowledge that the failure to provide Plaintiff with pre- and post-termination process violated his constitutionally protected right to due process of law.

[Doc. 29, p. 7; *see id*. p. 14]  *Abreu* in fact concluded that the defendants were entitled to qualified immunity because "there is no clearly established law requiring pre-termination or post-termination hearings in the context of a *bona fide* RIF."  *Abreu*, 797 F. Supp. 2d at 1240.

*Abreu* held that the plaintiffs in that case were entitled to pre- and post-termination hearings.  *Id*. at 1236-38 (under different circumstances, because there was some consideration of plaintiffs' job qualifications and performance in the RIF procedures).  Plaintiff argues that *Abreu* clearly established these rights and that Moser had actual knowledge of *Abreu* because Moser received a copy of the *Abreu* opinion on June 17, 2011.  [Doc. 29, p. 7]  But Plaintiff was required to identify Supreme Court or Tenth Circuit caselaw on point, or to demonstrate that the weight of authority from other circuits shows this right was clearly established.  *See Albright*, 51 F.3d at 1535.  A district court decision does not "clearly establish" the law.  *Estate of B.I.C. v. Gillen*, 761 F.3d 1099, 1106 (10th Cir. 2014); *Woodward v. City of Worland*, 997 F.2d 1392, 1397 (10th Cir. 1992).

Plaintiff did not cite Supreme Court or Tenth Circuit caselaw on point, and did not attempt to demonstrate that the weight of authority from other circuits showed that the asserted

18

rights were clearly established in analogous factual situations.  Since Plaintiff failed to carry his burden, Defendants are entitled to qualified immunity in the context of a *bona fide* RIF.  *See Smith*, 707 F.3d at 1162; *Rojas*, 727 F.3d at 1004.

Plaintiff states that he does not oppose the grant of qualified immunity to Skandera, "because Plaintiff lacks evidence that Skandera was aware of clearly established law relating to Plaintiff's entitlement to pre- and post-termination hearings."  [Doc. 25, pp. 1, 14]  This concession—like Plaintiff's argument that Moser is not entitled to qualified immunity because he had "actual knowledge" of *Abreu*—is based on a misapprehension of the qualified immunity standard.  [Doc. 29, pp. 7, 14]  Plaintiff erroneously describes the standard as whether an official "knew or should have known" that denial of hearings violated due process.  [Doc. 29, p. 12]  Before 1982, qualified immunity was unavailable if the official "*knew or reasonably should have known*" that his conduct would violate a plaintiff's constitutional rights.  *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982).  But in *Harlow*, the Supreme Court reconsidered that standard and eliminated any subjective component; after *Harlow*, consideration of the defendant's intent as it relates to his knowledge of the law is irrelevant.  *Poolaw v. Marcantel*, 565 F.3d 721, 735 (10th Cir. 2009); *Bruning v. Pixler*, 949 F.2d 352, 356 (10th Cir. 1991).  The qualified immunity inquiry now turns on the "'objective legal reasonableness'" of the defendant's conduct:  "whether a reasonable person in the defendant's position would have known that his conduct violated" the plaintiff's constitutional right.  *Anderson*, 483 U.S. at 639; *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1218 (10th Cir. 2008).

Under this objective standard, it is irrelevant whether Moser or Skandera had actual knowledge of *Abreu*.  Relying on the same analysis for Moser and Skandera, the Court concludes that both Defendants are entitled to qualified immunity for the same reason:  Plaintiff failed to

carry his "heavy burden" to demonstrate that the constitutional rights asserted were clearly established. *See Martinez*, 479 F.3d at 1295 ("In short, although we will review the evidence in the light most favorable to the nonmoving party, the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." (internal quotation marks omitted)).

### (3)  Conclusion under *bona fide* RIF

Because the Court concludes that Plaintiff failed to carry his burden on the second prong of the qualified immunity analysis, the Court was not required to decide whether Defendants violated Plaintiff's constitutional rights.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Court concludes that, to the extent Plaintiff asserts that he was denied due process under a RIF which he admitted was *bona fide*, Defendants are entitled to qualified immunity.

Since Plaintiff failed to satisfy his two-part burden on "'the *legal* qualified immunity question,'" the traditional summary judgment burden (to show there are no genuine issues of fact) never shifted back to Defendants. *Rojas*, 727 F.3d at 1005 (quoting *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1327 (10th Cir. 2009) (Holmes, J., concurring)).  "If, and only if, the plaintiff meets [the two-part qualified immunity test] does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law."  *Id.* at 1003 (internal quotation marks omitted).

Plaintiff's failure to satisfy both parts of the "strict two-part test" on qualified immunity means that the Court need not consider this claim further.  *See id*. at 1005 (stating that court need not reach issue of whether there is genuine issue of material fact).  Defendants are entitled to

summary judgment, to the extent that Plaintiff claims he was denied due process in relation to a *bona fide* RIF.

**B.  RIF alleged to be a "sham"**

The Complaint alleges that Plaintiff "objected to his proposed removal and advised PED that he considered the action to be in retaliation for his prior complaint activity."  [Doc. 1-1, p. 6, ¶ 20]  Defendants deny this allegation.  [Doc. 6, p. 6, ¶ 20]  Defendants argue that the RIF was *bona fide* and that "the RIF planners were not aware of the trigger for the alleged retaliation— Mr. Raymond's litigation against the PED."  [Doc. 31, pp. 2-3 (footnote omitted)]

In *West*, the Tenth Circuit held that the plaintiff was entitled to hearings when she asserted that the reduction in force was a sham aimed particularly at her.  *West*, 967 F.2d at 368. West was the only employee terminated.  The Tenth Circuit explicitly distinguished a situation in which there is a *bona fide* RIF, "particularly when the reduction involves a large number of employees and is not directed toward just one employee or a small number of employees"; in this situation, the Tenth Circuit acknowledged, several circuits suggested that due process might not require a pretermination hearing.  *Id.* at 367.  The Tenth Circuit stated that it did not need to "speculate whether a pretermination hearing would be required in such circumstances."  *Id.*

If Plaintiff's situation were like West's, a right to pre- and post-termination hearings was "clearly established."  But Plaintiff has not shown that he was entitled to such hearings on the basis of a claim of sham, for two reasons.

**(1)  No facts designated in support**

First, Plaintiff claims that his position was included in the RIF as a sham or subterfuge, in retaliation for his successful prosecution of a civil rights claim against PED that was settled about two months before the RIF, on grounds favorable to Plaintiff.  [Doc. 29, p. 2; Doc. 30, p. 5,

¶ 5)  In their Motion, Defendants presented argument and set forth factual allegations directed to this point.  [Doc. 25, pp. 4-7, 19-25]  But Plaintiff's Response stated that the RIF was *bona fide*, that the issue of retaliation is not properly before the Court at this time, and that many of Defendants' factual allegations are irrelevant at this point; Plaintiff also stated that he had not had the opportunity to conduct discovery on points not material to qualified immunity.  [Doc. 29, pp. 2-3]  Plaintiff did not designate specific facts to show that those who included his position in the RIF knew of Plaintiff's prior litigation, and Plaintiff did not specifically dispute most of Defendants' allegations on this point.

Defendants allege that Deputy Secretary Aguilar developed the RIF plan, and that Aguilar "was not aware of Plaintiff's litigation or its settlement when he made the decision to include all positions in the [Office of Inspector General ("OIG")] in the RIF Plan,"[8] and that "Aguilar did not select [Plaintiff's position] for elimination based on [Plaintiff's] lawsuit against PED."  [Doc. 25, p. 5, ¶¶ 17, 19]  Defendants allege that:  Secretary-Designate Skandera assigned Aguilar to develop the RIF plan; Skandera reviewed and approved the RIF plan; and Skandera signed the settlement agreement—but Skandera "was not aware of the details of the lawsuit or of [Plaintiff's] then current position within the Office of Inspector General."  [Doc. 25, p. 4, ¶ 9; Doc. 25, p. 6, ¶ 20]  Although Skandera was generally aware of the existence of the lawsuit, she could not have retaliated without knowing of Plaintiff's current position.  Nor is there any allegation that Skandera caused Aguilar to include Plaintiff's position in the RIF; on the contrary, it is alleged—and not disputed by Plaintiff—that it was Aguilar who made the decision

---

[8] Defendants assert that all seven OIG positions were eliminated, but that five positions were vacant at the time of the RIF and are therefore not shown on Exhibit C.  Plaintiff does dispute one point—whether all seven OIG positions were eliminated in the RIF.  [Doc. 25, p. 5, ¶ 17]  Plaintiff asserts that only two of the seven OIG positions were eliminated.  [Doc. 29, pp. 3-4 (disputing UMF #17)]  The Court agrees with Defendants that Plaintiff fails to properly support this assertion under Civ. R. P. 56(e).  [Doc. 31, pp. 3-4]  Neither Plaintiff's conclusory assertion in his affidavit nor Defendants' Exhibit C is sufficient to support Plaintiff's allegation.  [Doc. 25-2, p. 14]  The Court's purpose here is merely to acknowledge that Plaintiff partially disputes Defendants' UMF ¶ 17; the portion disputed is not relevant and resolution of this difference would not affect the Court's conclusion.

to eliminate the OIG.[9]  [Doc. 25, p. 5, ¶ 17]  Defendants allege that Moser assigned Andrea Rivera-Smith to assist PED with the development of the RIF plan, but there is no allegation that she knew of Plaintiff's prior litigation, caused Plaintiff's position to be included in the RIF, or retaliated against Plaintiff.  [Doc. 25, p. 4, ¶ 13]  Defendants make allegations that Moser was not aware at the relevant time of Plaintiff's prior litigation.  [Doc. 25, pp. 6-7, ¶¶ 25-26]  But even if Moser were aware, it did not matter because Defendants also allege that "Director Moser had no input into the PED RIF Plan, did not select [Plaintiff's] position or the OIG for the RIF, and did not question PED or SPO personnel about whether [Plaintiff] was or was not included in the PED RIF Plan."  [Doc. 25, p. 6, ¶ 23]

Rather than disputing these allegations, Plaintiff's Response states that most of them are irrelevant to the Motion currently before the Court (except for Paragraphs 20 and 25, which Plaintiff did not dispute; and Paragraph 17, which Plaintiff disputed only on a different point). [Doc. 29, pp. 3-4]  Without allegations—much less identification of specific facts—that those responsible for including Plaintiff's position in the RIF knew of Plaintiff's prior litigation, Plaintiff has not shown entitlement to process due upon a claim of a retaliatory RIF.  *See Adler*, 144 F.3d at 671; *Sealock*, 218 F.3d at 1209.  Plaintiff's prior litigation could not have caused his inclusion in the RIF unless those who made the RIF decisions knew of the prior litigation.  *See Sabourin v. Univ. of Utah*, 676 F.3d 950, 958-59 (10th Cir. 2012) (affirming summary judgment on retaliation claim because there was no genuine issue of causal connection between employee's request for FMLA leave and RIF, when official made RIF decision without knowing of FMLA request—which was made later).

---

[9] Plaintiff disputes whether the entire OIG was eliminated, but does not dispute Defendants' allegation that it was Aguilar who made the decision.  [Doc. 29, pp. 3-4, ¶ 17]

### (2)  No timely claim of sham or retaliation

The second reason that Plaintiff has not shown entitlement to hearings due upon a claim of sham concerns a critical distinction between Plaintiff's case and the *West* case.  As the Court concluded above, it was not clearly established that Plaintiff was entitled to hearings in the context of a *bona fide* RIF.  Since it was not clear to a reasonable official that hearings were required under a *bona fide* RIF, Plaintiff would have had to inform such an official that there was some additional factor that entitled Plaintiff to hearings.  Plaintiff's claim that the RIF was a sham as applied to him could constitute such a factor.  *See West*, 967 F.2d at 368 (holding that plaintiff was entitled to hearings when she made a claim of sham).  But communication of such a claim was essential; Plaintiff cannot claim a deprivation of process due only on the basis of an uncommunicated claim.  *See Perkowski v. Stratford Bd. of Educ.*, 455 F. Supp. 2d 91, 96-97 (D. Conn. 2006) (holding that employer is entitled to summary judgment when employee claiming due process violation for failure to give pretermination hearing in RIF failed to inform employer of claim of sham).

The Complaint alleges that Plaintiff advised PED of his claim of retaliation [Doc. 1-1, p. 6, ¶ 20], but Plaintiff fails to properly support this allegation by designating specific facts in support.  *See Sealock*, 218 F.3d at 1209.  Plaintiff was not entitled to rest on his pleadings or on unsubstantiated conclusory allegations.  *See id*.  Plaintiff's Affidavit and Response do not provide support; in fact, Plaintiff admits that on several occasions he did not raise his claim of retaliation. [Doc. 30, pp. 6-7, ¶¶ 9-10, 16; Doc. 29, p. 4, ¶ 30]

Defendants have no burden to disprove Plaintiff's unsupported claim.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Defendants, however, go beyond their burden of pointing out an absence of evidence to support Plaintiff's claim.  *See id*.  Defendants made factual allegations

supported by affidavits, which Plaintiff did not dispute (although he labeled some as irrelevant), showing that Aguilar, Skandera, and Moser were not aware of the prior litigation or of a retaliation claim at the critical times.  [Doc. 25, pp. 5-7,  ¶¶ 19-20, 23, 24-28]  In emails sent to Moser and Skandera before the RIF, Plaintiff made cryptic reference to the settlement of his prior litigation against PED:  "on the heals of a settlement."  [Doc. 25-3, p. 8; Doc. 25-2, p. 17]  Defendants made an undisputed allegation that this email was "cryptic," and, more important, that the email did not in fact indicate Plaintiff's belief that his inclusion in the RIF would constitute retaliation or subterfuge.  [Doc. 25, p. 7, ¶¶ 25, 28]

On June 3, 2011, Plaintiff initiated a three-minute telephone conversation with Moser.  [Doc. 25, p. 6, ¶ 24]  Plaintiff expressed concern that his position might be eliminated in the RIF, but did not tell Moser that Plaintiff believed inclusion of Plaintiff's position in the RIF would constitute retaliation.  [Doc. 25, pp. 6-7, ¶¶ 24, 26 (Plaintiff states ¶ 26 is irrelevant, but does not dispute it, *see* Doc. 29, p. 3)]  Plaintiff followed up this conversation with an email forwarding several emails from 2007 and the following new message:

Hello Eugene,

Thank you for speaking with me this morning.

I wanted to jog our memory (emails below) on when we met at the LFC.

I also wanted to follow-up and provide you my position information:

| Agency: | Public Education Department |
|---------|------------------------------|
| Bureau: | Office of Inspector General |
| Note: | Detailed to DVR |
| Position: | # 21370 |
| Title: | A/O II |
| Pay Band: | 85 |
| Status: | PERM |

I am sure that you share and understand my concern being on the heals of a settlement with PED . . .

Again, thank you for your time and consideration in this RIF matter.

Bernard Raymond, PHR

[Doc. 25-3, p. 8]

On June 6, 2011, Plaintiff sent an email to Skandera, acknowledging his awareness that a RIF plan would be proposed and requesting consideration of an alternative to layoff if Plaintiff's position was included in the RIF plan:

> Greetings Secretary Skandera:
>
> It is my understanding that a RIF plan is being proposed at the State Personal Board meeting on Friday.
>
> I am requesting that you consider an option if my position is included as part of the RIF Plan; as it is on the heals of our settlement agreement.
>
> The option I am asking you to consider is a reduced work week/job share.   I have attached a draft agreement for your consideration in lieu of eliminating my position listed below:
>
> Agency:          Public Education Department
> Bureau:          Office of Inspector General
> Note:            Detailed to DVR
> Position:        # 21370
> Title:           A/O II
> Pay Band:        85
> Status:          PERM
>
> I am available to meet at your request.
>
> Your consideration in this matter is greatly appreciated,
>
> Bernard Raymond, PHR

[Doc. 25-2]   Skandera forwarded this email to Aguilar, who did not know what "settlement agreement" was referred to in the email.  [Doc. 25, p. 7, ¶¶ 27-28 (undisputed)]

These emails are not sufficient to advise Moser, Skandera, or Aguilar that Plaintiff was making a claim of retaliation, so as to entitle him to pre-termination hearings.  Employees facing a RIF would be understandably concerned about future employment, and Plaintiff could merely be expressing concern about what position he might obtain after a RIF.  This conclusion is, of course, supported by the undisputed allegation that Plaintiff's email did not indicate that Plaintiff claimed his inclusion in the RIF would constitute retaliation.  [Doc. 25, p. 7, ¶ 28]

The Court reaches the same conclusion with respect to post-termination hearings.   On July 29, 2011, Plaintiff sent an email to Moser, notifying him that Plaintiff was appealing his separation under NMSA 1978, § 10-9-18, and was requesting a hearing:

> Greetings Mr. Eugene Moser, SPO Director:
>
> In accordance with NMSA 10.9.18; I am appealing my separation on July 1, 2011, from the State of New Mexico, Public Education Department and hear-by request a hearing.
>
> Thank you,
>
> Bernard Raymond

[Doc. 25-3]   Plaintiff was not entitled to an appeal under this state statute, however, because Plaintiff was not "dismissed, demoted or suspended."   NMSA 1978, § 10-9-18(A), (F) (2009); *see Cibas*, 1995-NMCA-046, ¶ 15, 898 P.2d at 1269 (holding no right of appeal under § 10-9-18 for employee laid off under RIF).   The July 29th email makes no reference to retaliation, and includes no assertion that the RIF is a "sham" as to Plaintiff.

Mindful of its obligation to view the evidence in the light most favorable to Plaintiff, the Court nevertheless determines that Plaintiff failed to carry his burden to "set forth specific facts" from which a rational trier of fact could find in Plaintiff's favor if he intended to claim entitlement to hearings based on a claim of sham.   *Adler*, 144 F.3d at 671 (internal quotation marks omitted).

### (3)  Conclusion on RIF alleged to be a "sham"

Based on the current record, the Court concludes that Plaintiff has not shown entitlement to procedural due process beyond that required for a *bona fide* RIF.   Plaintiff has not shown that he was entitled to additional notice or hearings based on a claim of sham or retaliation.

## CONCLUSION

The Court concludes that Defendants are entitled to summary judgment on the § 1983 claim under Count IV.  This portion of Count IV is dismissed with prejudice.  The § 1985 claim of conspiracy under Count IV remains standing.

**IT IS THEREFORE ORDERED THAT:**

*Defendants Skandera's and Moser's Motion and Memorandum in Support of Partial Summary Judgment on Plaintiff's Civil Rights Claim* [Doc. 25] is **GRANTED.**

_____
**UNITED STATES DISTRICT JUDGE**